# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSE ANTONIO SANCHEZ DE ANDA,

                              Plaintiff,

v.                                      Case No. 16-CV-753-JPS

JOEL WENER,                      **ORDER**

                              Defendant.

**1.    INTRODUCTION**

Plaintiff Jose Antonio Sanchez De Anda ("Sanchez De Anda"), a prisoner, brings this action against Defendant Joel Wener ("Wener"), the Pepin County Sheriff, pursuant to 42 U.S.C. § 1983. Sanchez De Anda alleges that Wener violated the Eighth Amendment prohibition on the use of excessive force by grabbing his neck in a way that choked him and caused bruises and injuries to his trachea. On May 1, 2017, Wener filed a motion for summary judgment, supported by a brief, affidavits, and proposed facts. (Docket #24-#29). On May 30, 2017, Sanchez De Anda timely responded by filing a brief, a declaration, a response to Wener's proposed facts, and proposed facts of his own. (Docket #31-34). On June 13 and 14, 2017, Wener replied in support of his motion and responded to Sanchez De Anda's proposed facts. (Docket #35-#36). The motion is fully briefed and, for the reasons explained below, it will be denied.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3. **RELEVANT FACTS**

During all times relevant to this suit, Sanchez De Anda was incarcerated at the Pepin County Jail (the "Jail") in Durand, Wisconsin. Defendant Wener was the Sheriff of Pepin County. Greg Balow ("Balow") was Wener's chief deputy, and Janet Krogstad-Bechel ("Bechel") was a communications and corrections officer at the Jail. Here end the relevant facts on which the parties agree.

According to Sanchez De Anda, he began a hunger strike on December 28, 2015 because he was denied Muslim clergical representation at the Jail. (Docket #33 at 1). That day he began to feel abdominal pain and noticed blood in his stool. *Id.* As his pain became more intense, he paced in

his dorm area and informed Bechel that he needed an ambulance. *Id.* Bechel said she would help after she was done delivering medication to another dorm, and Sanchez De Anda escalated his cries for help. *Id.* Bechel closed the trap door to Sanchez De Anda's dorm, and Sanchez De Anda started banging on the door to get attention. *Id.*

Soon Wener and Balow arrived. *Id.* at 2. Wener, looking upset and agitated, asked Sanchez De Anda what was wrong with him and yelled that he would take Sanchez De Anda to the hospital himself but would not call for medical help. *Id.* Sanchez De Anda told Wener he was scaring him and would go to the hospital with anyone but him. *Id.* Wener responded with profanity and entered the dorm stating "I'm going to get you now, fucker." *Id.* Sanchez De Anda backed up, fearing for his safety, and Wener started chasing Sanchez De Anda around the dorm. *Id.*

As a physical assault became imminent, Sanchez De Anda put his hands up to protect his face, but Wener managed to get his hands on Sanchez De Anda's neck and apply pressure. *Id.* at 3. Wener said, "I got you now fucker" and "my mother just died a week ago, don't let me take this out on you, fucker." *Id.*[1] Just as Sanchez De Anda began to go limp, Wener released enough pressure for him to breathe and scream that he was being choked. *Id.* Balow and Bechel looked on but did not offer any help. *Id.* Sanchez De Anda escaped Wener's grip briefly but Wener pushed Sanchez De Anda up against lockers and again applied a choke hold. *Id.*

---

[1]Sanchez De Anda included as an exhibit to his summary judgment opposition brief a copy of Wener's discovery responses, in which Wener states that his mother passed away on December 21, 2015, seven days before the altercation. (Docket #34-1 at 1).

Both men eventually left the dorm, with Wener still trying to gain access to Sanchez De Anda's throat until Balow gestured toward the camera, implying to Wener that he should stop. *Id.* Wener patted Sanchez De Anda on the shoulder as if nothing had happened. *Id.* Balow's and Wener's reports following the incident both indicate that Wener put his hands on Sanchez De Anda's neck to direct him against the lockers during the altercation. (Docket #34-1 at 2-3). Sanchez De Anda was taken to segregation and later taken to a nearby hospital to be treated for his injuries. (Docket #33 at 3-4).

Sanchez De Anda produced photographs of bruises on his neck and a medical report from River Falls Area Hospital indicating that, in addition to the hemorrhoid that had caused his bloody stool, he was treated for "ecchymosis of the neck, initial encounter, fracture closed, thyroid cartilage, initial encounter, and facture, thyroid cartilage closed, initial encounter." (Docket #34-1 at 8, 11-15). Two weeks later, Sanchez De Anda attempted suicide allegedly because of the psychological damage he incurred. (Docket #33 at 4).

Wener tells a different story. He says that he and Balow responded to Bechel's call for backup when Sanchez De Anda became extremely agitated, yelling and cursing at Bechel for medical attention, kicking the door of his dorm, and screaming about his constitutional rights. (Docket #28 at 2-3). They immediately noticed that Sanchez De Anda had covered the dorm camera with some type of wet paper and had spread some type of liquid substance on front of the dorm door. *Id.* at 3. Sanchez De Anda was wearing his shirt on his head in violation of Jail policy. *Id.* at 4. The officers agreed that Sanchez De Anda would have to be moved to a holding

cell to protect him and others, but Sanchez De Anda did not obey Wener's order to exit the dorm. *Id.* at 3-5.

Wener offered to take Sanchez De Anda to the hospital, but Sanchez De Anda refused, demanding an ambulance instead. *Id.* After a few minutes of this, Wener stepped into the dorm and approached Sanchez De Anda, who responded by crouching down into a defensive position, clenching his fists, and threatening Wener. *Id.* at 5. When Wener could not calm Sanchez De Anda down, he engaged Sanchez De Anda physically, first by grabbing his arm, and then, after Sanchez De Anda resisted, by pushing him toward the inmates' lockers with his hands on Sanchez De Anda's collarbone. *Id.* at 6-7. Balow and Wener eventually succeeded in removing Sanchez De Anda from the dorm, and he was transported to a holding cell and then to a doctor. *Id.* at 7-9.

**4.    ANALYSIS**

Sanchez De Anda raises an Eighth Amendment claim for excessive force, and Wener opposes it by arguing, first, that his use of force was justified and, second, that he is entitled to qualified immunity.

Sanchez De Anda's excessive force claim raises triable questions of fact. The claim ultimately rests on a credibility determination regarding Sanchez De Anda's and Wener's versions of the events of December 28, 2015. On summary judgment, the Court cannot make such a determination. Likewise, because Wener's assertion of qualified immunity rests on disputed facts, which the Court must here resolve in Sanchez De Anda's favor, Wener cannot avail himself of qualified immunity at this time. Accordingly, the Court must deny summary judgment.

### 4.1 Excessive Force

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When an official is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012). Several factors are relevant to this determination, including the need for force, the amount applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Caffey v. Maue*, 679 F. App'x 487, 491 (7th Cir. 2017).

In evaluating whether the record here supports a finding that Wener applied force in "good-faith," the Court is mindful that "[j]ails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). "In many circumstances—often when faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification" for use of force. *Id.* at 477. But "[w]hat must be decided in each case . . . is whether the facts surrounding the [use of force]—as [the plaintiff] portrays them—demonstrated actual malice or sadistic purpose on the part of the [defendant]." *Id.*

The Seventh Circuit's decision in *Lewis* is instructive. The plaintiff inmate in that case was in the midst of a hunger strike when the events at issue occurred. *Id.* at 470. On the eleventh day of his fast, he called for

medical assistance because he was not feeling well. *Id.* The officer who responded to the call denied the request because the inmate had recently refused medical treatment. *Id.* The inmate became agitated and threw on the ground a bottle of ibuprofen he had previously received from a nurse. *Id.* Three guards went to the inmate's cell and one of them ordered the inmate off the bed. *Id.* at 470-71. Then, according to the inmate, one of the officers shot him in the leg with a taser gun without provocation. *Id.* at 471. The officers, on the other hand, testified by affidavit that they entered the cell because they feared the inmate would follow through on his threat to overdose on ibuprofen, and when the inmate cursed and yelled, refusing to be cuffed, one of the officers tased him. *Id.*

The *Lewis* court overturned the district court's grant of summary judgment to the defendant officer on the plaintiff's excessive force claim, finding that a reasonable jury could conclude that the officer who tased the plaintiff did so maliciously. *Id.* at 478. The court observed that, unlike in other cases upholding the use of force where the inmate was "violent, aggressive, confrontational, unruly, or presented an immediate risk of danger to themselves or others," similar facts were "noticeably absent" from Lewis' version of events. *Id.* at 477. Looking at the facts in a light most favorable to the inmate, the court found "troubling" the "absence of any agitation or threat from [the inmate]; the short passage of time between [the officer's] order and the taser shot; [the officer's] single, unrepeated order; and the dearth of warnings regarding the consequences of [the inmate's] failure to comply." *Id.* at 478. Based on those facts, the court could not say that the officer acted in good faith or that he acted maliciously and wantonly; it could only say that the inmate raised a genuine issue of

material fact regarding the officer's state of mind that precluded summary judgment. *Id.*

The facts of this case as told by Sanchez De Anda mirror those in *Lewis*. Most importantly, Sanchez De Anda claims that he was not hostile or provocative when Wener came to his dorm, but, on the contrary, was scared by Wener's demeanor. As in *Lewis,* Sanchez De Anda did not threaten the officers and did not disobey an order, except insofar as he explained to Wener that he was scared of him and wanted to be taken to the hospital by someone other than him. These facts, coupled with Sanchez De Anda's assertion that Wener retaliated against him because he was upset about his mother's passing, are enough to raise the possibility that a jury could find Wener acted with "actual malice or sadistic purpose" when he exerted force on Sanchez De Anda's neck. *Id.* at 477; *see also Caffey*, 679 F. App'x at 489 (dispute of fact as to whether prison guard's alleged use of force in striking inmate on the head with a stick without provocation was malicious); *Thomas v. Stalter,* 20 F.3d 298, 302 (7th Cir. 1994) (jurors could reasonably conclude that prison guard acted maliciously and sadistically when he punched immobilized inmate in the mouth and told the inmate to "shut up" immediately afterward).

The Seventh Circuit's decision in *Guitron v. Paul*, 675 F.3d 1044 (7th Cir. 2012), upon which Wener relies, does not suggest a different result. There, the court reviewed the district court's dismissal of the complaint upon screening. According to the complaint (and additional facts set forth in the inmate's appellate brief), the defendant officer, while escorting the inmate to segregation, saw other inmates in the hallway and ordered the plaintiff to stand against the wall. *Id.* at 1045. Instead of complying, the plaintiff replied "That's bogus man" and, at that point, the officer bent the

plaintiff's wrist. *Id.* The plaintiff remained defiant, and the officer slammed the plaintiff against the wall. *Id.* The Seventh Circuit affirmed dismissal of the complaint, finding that, because the inmate did not dispute that he "disobeyed a command that was designed to maintain order within the prison," there existed sufficient justification for the use of force. *Id.* at 1046.

Unlike the plaintiff in *Guitron*, Sanchez De Anda has adequately contested the facts underlying Wener's version of their encounter. Thus, in contrast to *Guitron*, where the plaintiff admitted that he was insubordinate, here Sanchez De Anda maintains he did nothing to provoke Wener. Because their testimony differs in this critical respect, the question of what really happened inside the cell that day must be posed to the jury and not prejudged by the Court.

Video evidence from outside Sanchez De Anda's dorm, submitted by Wener, does not save Wener's cause, because it is not sufficient to discredit Sanchez De Anda's story of what happened *inside* the cell. *See* (Docket #25). And although the fact that Sanchez De Anda covered up the camera facing inside his cell might be used at trial in Wener's favor to call Sanchez De Anda's credibility into question, credibility determinations are beyond the Court's charge at this stage. So, too, with the affidavits by other prison officials that Wener did not use excessive force against Sanchez De Anda; the Court cannot grant summary judgment by counting which side has produced more witnesses in support of its position. *Waldridge*, 24 F.3d at 921. What Sanchez De Anda will be able to prove at trial is a different matter, but he has presented enough here that if the jury accepts his story, it could find in his favor; that is all that is required to survive the defendant's motion for summary judgment. *Lewis*, 581 F.3d at 478.

### 4.2 Qualified Immunity

In addition to attacking Sanchez De Anda's claim directly, Wener raises the defense of qualified immunity. That doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To defeat an assertion of qualified immunity, the plaintiff must first proffer facts which, if believed, amount to an actual violation of his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Easterling v. Pollard*, 528 F. App'x 623, 656 (7th Cir. 2013). Next, the plaintiff must show that the violation of his constitutional rights was "clearly established under applicable law at the time and under the circumstances that the defendant official acted." *Easterling*, 528 F. App'x at 656 (citing *Pearson*, 555 U.S. at 232). A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and alterations omitted). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts are not to "'define clearly established law at a high level of generality.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 742). It would not do, for example, to deprive a correctional officer of immunity merely because the Eighth Amendment broadly proscribes "cruel and unusual punishment," or even more specifically, prohibits excessive force in the context of inmate discipline. *See id.* at 309 (faulting overbroad descriptions of Fourth Amendment rights such as "warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment"). The inquiry should be focused on particular conduct undertaken in particular situations. *Id.*

The Court finds Wener's assertion of qualified immunity unavailing. Wener argues the case law is clear that "where a prison official is responding to an inmate or detainee who refuses to obey orders and places others, including prison officials, in unsafe scenarios, prison officials are allowed to reasonabl[y] respond with force to restore order necessary to safely operate the prison system." (Docket #29 at 19). Of course, as explained above, this is true. *See Guitron*, 675 F.3d at 1045. But if the Court is to credit Sanchez De Anda's version of events over Wener's, as it must on summary judgement, Sanchez De Anda did not refuse to obey an order or threaten anyone's safety before being choked by Wener. Resolving the disputed facts in Sanchez De Anda's favor, Wener is not entitled to summary judgment on his qualified immunity defense. *See Lewis*, 581 F.3d at 479. After the jury determines the facts underlying this defense, he may revisit it.

5. **CONCLUSION**

Sanchez De Anda has demonstrated that genuine disputes of material fact exist with respect to his excessive force claim against Wener.

Additionally, Wener is not entitled to qualified immunity at this time. Wener's motion for summary judgment must, therefore, be denied in its entirety.

Before this case can proceed to trial, however, another issue must be addressed by the parties: whether Sanchez De Anda was a pre-trial detainee or a sentenced prisoner at the time of the incident in question. In his summary judgment submission, Wener noted that "it is unclear whether Mr. Sanchez De Anda was a pretrial detainee subject to the Fourteenth Amendment or an inmate detained after sentencing under the Eighth Amendment." (Docket #29 at 16). Sanchez De Anda himself has not provided this information either. This is of no moment for the purposes of the Court's summary judgment decision because Sanchez De Anda has made out a prima facie Eighth Amendment claim, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Lewis*, 581 F.3d at 475.

But the distinction between the two constitutional protections will assume importance at trial. In the excessive force context, the Due Process Clause, which prohibits all "punishment," affords broader protection than the Eighth Amendment's protection against only punishment that is "cruel and unusual." *See Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996). Before the Court can properly instruct the jury on the standard it is to apply to Sanchez De Anda's excessive force claim, the parties will be required to determine whether Sanchez De Anda was a pre- or post-trial detainee on December 28, 2015.

Accordingly,

**IT IS ORDERED** that Wener's motion for summary judgment (Docket #24) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge